THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| MARGARET G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> **Acting Commissioner of Social Security,** <br><br> Defendant. | REPORT AND RECOMMENDATION <br><br> Case No. 2:23-cv-00169-TS-JCB <br><br><br> District Judge Ted Stewart <br><br> Magistrate Judge Jared C. Bennett |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Plaintiff Margaret G.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[2] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. As shown below, the court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

---

[1] ECF No. 5.

[2] 42 U.S.C. §§ 1381-1383f.

## Procedural Background

Plaintiff alleges disability due to various physical and mental impairments. Plaintiff applied for SSI on February 8, 2021.[3] Plaintiff's application was denied initially[4] and upon reconsideration.[5] Thereafter, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[6] The ALJ denied Plaintiff's SSI claim in a written decision,[7] which Plaintiff appealed. The Appeals Council denied her appeal,[8] which made the ALJ's decision final for purposes of judicial review.[9] Plaintiff timely filed her complaint in this case seeking review of the Commissioner's final decision.[10]

## Standard of Review

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[11] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[12] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a

---

[3] ECF No. 6, Administrative Record ("AR ___") 172-182.
[4] AR 63.
[5] AR 72.
[6] AR 31-52.
[7] AR 12-30.
[8] AR 1-6.
[9] 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.
[10] ECF No. 1.
[11] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).
[12] 42 U.S.C. § 405(g).

preponderance."[13] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[14] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[15]

These standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[16] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[17]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [she] is, disability benefits are denied. If [she] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[18]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any

---

[13] *Lax,* 489 F.3d at 1084 (quotations and citation omitted).

[14] *Madrid v. Barnhart,* 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[15] *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[16] 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[17] 20 C.F.R. § 416.920(a)(4); *see also Williams,* 844 F.2d at 750.

[18] *Williams,* 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(ii).

3

gainful activity, regardless of his or her age, education, or work experience."[19] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[20] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[21] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments.[22] In making that determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[23]

For the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[24] "If the claimant is able to perform [her] previous work, [she] is not disabled."[25] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[26]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[27] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age,

---

[19] 20 C.F.R. § 416.925(a); *see also id*. § 416.920(a)(4)(iii).
[20] *Williams*, 844 F.2d at 751.
[21] 20 C.F.R. § 416.920(e).
[22] *Id*. § 416.945(a)(1), (b)-(c).
[23] *Id*. § 416.945(a)(2).
[24] *Id*. § 416.920(a)(4)(iv).
[25] *Williams*, 844 F.2d at 751.
[26] *Id*.
[27] *Id*.

education, and work experience."[28] If the claimant "can make an adjustment to other work," she is not disabled.[29] If, on the other hand, the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[30]

## ANALYSIS

The ALJ erred at step five by failing to resolve an apparent conflict between the vocational expert's ("VE") testimony and the reasoning levels assigned by the Dictionary of Occupational Titles ("DOT") to the job of document preparer. Even if only that job is excluded due to this conflict, reversal and remand is necessary so the ALJ can determine whether the remaining jobs Plaintiff can perform exist in significant numbers in the national economy.

I. **The ALJ Failed to Resolve an Apparent Conflict Between the VE's Testimony and the DOT.**

The ALJ should have resolved the apparent conflict between the VE's testimony and the DOT. Plaintiff asserts a conflict between two things. First, the VE testified that Plaintiff could perform the job of document preparer. This, according to Plaintiff, is problematic because the job of document preparer requires a general educational development ("GED") reasoning level 3,[31] which in turn requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammic form[, and d]eal with problems involving several concrete variables in or from standardized situations."[32] Second, the ALJ concluded in

---

[28] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

[29] 20 C.F.R. § 416.920(a)(4)(v).

[30] *Id.*

[31] DOT § 249.587-018, 1991 WL 672349 (Jan. 1, 2016).

[32] *Id.*

Plaintiff's RFC that Plaintiff was limited to carrying out "simple, routine, and repetitive tasks."[33] Plaintiff is correct that the VE's testimony conflicts with the DOT's assigned "reasoning level" for the document preparer job, which the ALJ failed to resolve at step five. To explain why this omission was error, the court begins with the rules that apply to the ALJ's conflict-resolution function, then explains what occurred in this case, and concludes by showing that ALJ did not perform his conflict-resolution function.

First, the Commissioner's regulations require an ALJ to resolve conflicts between the VE's testimony and the DOT. Before an ALJ relies upon a VE's testimony to support a disability determination, the ALJ must: (1) fulfill the "affirmative responsibility" to ask the VE about any possible conflicts between the VE's testimony and the DOT; (2) identify and obtain a reasonable explanation for any such conflicts; and (3) explain in the decision how any such conflicts were resolved.[34]

Second, at Plaintiff's administrative hearing, the ALJ posed a hypothetical to the VE about an individual with Plaintiff's age, education, work experience, and RFC.[35] The VE testified that such an individual could not perform Plaintiff's past relevant work because it was "too skilled or too heavy."[36] The ALJ then asked the VE if such an individual could perform other work in

---

[33] AR 20.

[34] SSR 00-4p, 2000 WL 1898704, at *2-4 (Dec. 4, 2000); *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("We do not mean by our holding that the [DOT] 'trumps' a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

[35] AR 49-50.

[36] AR 50.

significant numbers in the national economy.[37] The VE testified that such an individual could perform the sedentary, unskilled jobs of document preparer, final assembler, and nut sorter.[38] For each representative occupation, the VE identified the approximate number of jobs available in the national economy as listed in the DOT.[39] The ALJ asked the VE if her testimony was consistent with the DOT.[40] The VE testified there was "nothing inconsistent" between her testimony and the DOT.[41] Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy.[42] The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT.[43]

Finally, juxtaposing what the law requires the ALJ to do and what the ALJ actually did shows that the ALJ failed to comply with the law regarding conflict resolution between the VE and the DOT. The Court of Appeals for the Tenth Circuit has recognized that an apparent conflict exists between jobs requiring level-three reasoning—such as document preparer—and an RFC limitation to "simple and routine work tasks."[44] Indeed, the Commissioner's own recent policy

---

[37] *Id.*

[38] *Id.*

[39] *Id.* Document preparer, DOT § 249.587-018, 1991 WL 672349 (Jan. 1, 2016) (approximately 25,000 positions in the national economy); final assembler, DOT § 713.687-018, 1991 WL 679271 (Jan. 1, 2016) (approximately 25,000 positions in the national economy); nut sorter, DOT § 521.687-086, 1991 WL 674226 (Jan. 1, 2016) (approximately 10,000 positions in the national economy).

[40] AR 51.

[41] *Id.*

[42] AR 24-25.

[43] AR 25.

[44] *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

guidance to VEs acknowledges this conflict, which, although not binding, is persuasive in showing that even the Commissioner recognizes a conflict in these particular circumstances.[45] Once a conflict arises between the VE's testimony and the DOT, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified."[46] Or, as the SSA ruling states: "In these situations, the adjudicator will . . . [a]sk the VE . . . if the evidence . . . she has provided conflicts with information provided in the DOT; and [i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."[47]

Here, the ALJ performed the first inquiry, but he did not proceed to step two to obtain a reasonable explanation regarding any apparent conflict. The VE did not raise the apparent conflict with the GED reasoning level, and the ALJ did not ask the VE about it. Because the ALJ was required but failed to elicit additional testimony from the VE explaining how Plaintiff can perform level-three reasoning with an RFC limitation to simple and routine tasks, the ALJ erred in determining Plaintiff could perform the job of document preparer. As the Tenth Circuit has explained,

---

[45] SOCIAL SECURITY ADMINISTRATION, VOCATIONAL EXPERT HANDBOOK 39-40 (March 2023), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_%28VE%29_Handbook-508.pdf (last visited October 12, 2023) ("An ALJ's hypothetical may limit the claimant to 'simple' or 'repetitive' tasks, and you identify jobs with a GED reasoning level of 3 or higher. There is an apparent conflict between a job that requires reasoning level 3, and a hypothetical individual that can perform only 'simple' or 'repetitive' tasks. Be prepared to explain how the hypothetical individual could perform this job." (footnotes omitted)).

[46] SSR 00-4p, 2000 WL 1898704, at *4; see also Haddock, 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant.").

[47] SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added).

> Though the ALJ asked the VE whether his testimony was consistent with the DOT, it clearly was not . . . . Thus, there is a conflict between the VE's testimony and the job descriptions in the DOT . . . . The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error.[48]

Therefore, the court is left with an unresolved apparent conflict between the RFC and the reasoning levels assigned by the DOT to the job of document preparer. This is reversible error unless it is harmless. As shown below, it's not.

## II.    The Failure to Resolve the Aforementioned Conflict is not Harmless Error.

The ALJ's failure to resolve the aforementioned conflict is not harmless error because the ALJ did not adequately determine whether the remaining jobs that the VE found consistent with Plaintiff's RFC were a "significant" number in the national economy. Applying harmless error may be appropriate to supply a missing dispositive finding in a social security disability proceeding, where, based on material the ALJ considered, the court can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.[49] The Commissioner contends that any error on the part of the ALJ was harmless because the VE identified two other jobs that Plaintiff can perform, of which there are approximately 35,000 positions available in the national economy.[50] The court rejects this argument because—although the court would like to—it cannot find as a matter of law that the 35,000 aggregate positions from the two remaining jobs constitute a "significant number of jobs" in the national economy.

---

[48] *Paulek*, 662 F. App'x at 594.

[49] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[50] ECF No. 13 at 13–14.

Although the Commissioner invites this court to find that 35,000 jobs is a "significant number" as a matter of law, the court declines the invitation because the court cannot ignore the Tenth Circuit's clear statements on the subject. The Tenth Circuit has consistently declined to draw "a bright line" to find a certain quantity of jobs constitutes a "significant number."[51] Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "'common sense in weighing the statutory language as applied to a particular claimant's factual situation.'"[52] Where, as here, an ALJ erroneously considers a job or jobs in reaching the determination that there are a significant number of jobs, the reviewing court generally should not supply that dispositive finding but, instead, should reverse and remand to allow the ALJ to make that determination.[53]

Nevertheless, in certain situations, it may be appropriate for the reviewing court to apply harmless error. As aforementioned, in *Allen*, the Tenth Circuit indicated that harmless error may be applied "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the reviewing court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in

---

[51] *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

[52] *Allen*, 357 F.3d at 1144 (quoting *Trimiar*, 966 F.2d at 1330).

[53] *See, e.g.*, *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) (reversing and remanding where the ALJ improperly considered two of three jobs because "the ALJ did not have an opportunity to evaluate whether the [remaining] job, standing alone, existed in significant numbers under the statute" (citing *Allen*, 357 F.3d at 1144)); *Allen*, 357 F.3d at 1144 (reversing and remanding where the ALJ erroneously considered one occupation with 800 jobs in determining whether a significant number of jobs existed because the ALJ "never had occasion to decide if the one hundred . . . jobs [for the other occupation] alone constituted a significant number under the statute" and noting that the court was "not in a position to draw factual conclusions on behalf of the ALJ" (quotations and citation omitted))."

any other way."[54] In doing so, however, the court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action."[55]

Even so, a court may find that an ALJ's erroneous inclusion of conflicting jobs at step five is harmless error where the remaining nonconflicting jobs exist in sufficiently significant numbers in the national economy.[56] How many jobs are enough to be "significant" is difficult to say because "the number appears be somewhere between 100, the number of jobs . . . [that the Tenth Circuit] refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs [the Tenth Circuit has] considered . . . to be sufficient so far for application of harmless error."[57]

This wide range has resulted in a mix of outcomes in the Tenth Circuit. For example, the Commissioner points out that other courts in this Circuit have concluded that fewer than 35,000 remaining nationwide positions was sufficient to find harmless error.[58] However, others,

---

[54] *Allen*, 357 F.3d at 1145.

[55] *Id.* at 1144-45.

[56] *See, e.g.*, *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant).

[57] *Evans v. Colvin*, 640 Fed. App'x 731, 736 (10th Cir. 2016).

[58] *See, e.g.*, *Collier v. Kijakazi*, No. CIV-21-187-JAR, 2022 WL 4377789, at *4 (E.D. Okla. Sept. 22, 2022) (finding approximately 30,000 remaining nationwide positions sufficient for harmless error); *Calvin v. Kijakazi*, No. CIV-21-1046-SM, 2022 WL 3268745, at *4 (W.D. Okla. Aug. 10, 2022) (27,000 remaining jobs); *White v. Kijakazi*, No. 21-2151-KHV, 2022 WL 1120517 (D. Kan. Apr. 14, 2022) (12,000 remaining jobs); *Bess-Beasley v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-358-KEW, 2019 WL 1258833, at *4 (E.D. Okla. Mar. 19, 2019) (25,000 remaining jobs); *Sly v. Berryhill*, No. CIV-17-781-BMJ, 2018 WL 1954836, at *3 (W.D. Okla. Apr. 25,

including this court, have declined to find a similar number of jobs significant as a matter of law and have remanded the case to allow the ALJ to make that determination in the first instance.[59] Absent analysis from the ALJ addressing this subject, the court continues to adhere to the overall legal premise that the ALJ—not this court—should decide in the first instance whether a number of jobs in the national economy is significant.

The legal fact is that Congress delegated these fact-intensive applications of the statutes that the Commissioner administers to the Commissioner. Out of respect for the Legislative Branch's lawful delegation of authority to the Executive Branch, the Judicial Branch must exercise restraint and not usurp the Executive Branch's role by making factual findings instead of reviewing them.[60] Thus, the court recommends reversing and remanding the Commissioner's decision to allow the ALJ to evaluate whether the occupations of final assembler and nut sorter present a significant number of jobs in the national economy that Plaintiff can perform.

---

2018) (32,000 remaining jobs); *Varela v. Berryhill*, No. CIV-17-650-BMJ, 2018 WL 1163031, at *6 (W.D. Okla. Mar. 5, 2018) (23,201 remaining jobs); *Fox v. Colvin*, No. CIV-14-489-R, 2015 WL 5178414, at *1 (W.D. Okla. Sept. 3, 2015) (32,000 remaining jobs).

[59] *See, e.g.*, *Lori B. v. Saul*, No. 2:20-CV-00044-JCB, 2021 WL 1063314, at *6 (D. Utah Mar. 19, 2021) (declining to find 25,000 jobs significant as a matter of law and remanding to allow the ALJ to make that determination in the first instance); *Terry T. v. Saul*, No. 19-CV-0684-CVE-CDL, 2021 WL 981284, at *5 (N.D. Okla. Mar. 16, 2021) (declining to find 108,000 jobs significant as a matter of law); *Brillhart v. Colvin*, No. CIV.A. 14-1387-JWL, 2015 WL 7017439, at *6 (D. Kan. Nov. 10, 2015) (declining to find 39,000 jobs significant as a matter of law).

[60] *Cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984) ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones . . . .").

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the court HEREBY RECOMMENDS that the Commissioner's decision be REVERSED AND REMANDED for the sole purpose of allowing the ALJ to consider whether the jobs of final assembler and nut sorter provide work that exists in significant numbers in the national economy that Plaintiff can perform.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[61] The parties must file any objections to this Report and Recommendation within 14 days after being served with a copy of it.[62] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 12th day of October 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[61] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).
[62] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).